148 So.2d 898 (1962)
Mrs. Reba C. ALEXANDER, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants-Appellants.
No. 5599.
Court of Appeal of Louisiana, First Circuit.
June 29, 1962.
On Rehearing January 18, 1963.
*899 Hynes & Lane, by Horace C. Lane, Baton Rouge, for appellants.
Allen B. Pierson, Pierson & Pierson, Ponchatoula, J. S. Kluchin, Jr., Bienvenu & Culver by J. C. Murphy, Jr., and Robert N. Ryan, New Orleans, Reid & Macy, by Arthur Macy, Hammond, for appellee.
Before ELLIS, HERGET and MILLER, JJ.
MILLER, Judge pro tem.
This is a damage suit for personal injuries instituted by Mrs. Reba C. Alexander against James W. Jenkins, and his insurer, State Farm Mutual Automobile Insurance Company. There is an alternate demand against Employers Mutual Liability Insurance Company based upon the proposition that if defendant Jenkins is not insured, then plaintiff's own liability policy with Employers Mutual would protect her up to $5,000.00 under the "Un-insured Motorist Clause." Rejecting defendant State Farm's defense of non-coverage by reason of prior cancellation, the trial court rendered judgment in favor of the plaintiff against State Farm and J. W. Jenkins, in solido in the sum of $5,000.00. The trial court dismissed the alternate demand against Employers Mutual Liability Insurance Company. From this adverse decision, defendant State Farm appeals to this court.
Another suit entitled National Union Fire Insurance Company v. State Farm *900 Mutual Automobile Insurance Company et al, La.App., 148 So.2d 904, having arisen out of the same accident, was consolidated for trial.
The facts of this accident are not disputed. On December 7, 1957, plaintiff, Mrs. Reba Alexander, was driving her automobile owned by her and her husband and proceeding in a westerly direction some two miles east of Ponchatoula, Louisiana, on U. S. Highway 190. Immediately ahead of plaintiff's car and traveling in the same direction was an automobile owned and operated by one Vincent Wells. Wells came to a full stop waiting for the eastbound traffic to clear in order that he might make a left turn off Highway 190. Plaintiff brought her car to a full stop two or three car lengths behind Wells' car. While both of these cars were thus stopped, a Ford pickup owned and operated by defendant, James W. Jenkins, likewise traveling in a westerly direction, approached from the rear and crashed into plaintiff's car with such impact that plaintiff's car was forced forward into Wells' car. Both the Wells' car and plaintiff's car suffered property damages and plaintiff suffered personal injuries. Although defendants' answers contain a general denial of the allegations of negligence, the overwhelming evidence indicates the sole and proximate cause of the accident was the negligence of defendant Jenkins. Counsel for defendant State Farm made no effort either in oral argument or brief to contest the negligence of Jenkins, but rather defended on the basis of non-coverage of insurance.
It is undisputed that defendant State Farm had issued a liability insurance policy to defendant J. W. Jenkins which would have covered this accident in the normal course of events. The sole issue is whether or not this policy had been cancelled by State Farm prior to the accident. Defendant State Farm contends that on September 30, 1957, a notice of cancellation was sent to defendant J. W. Jenkins, advising him of the cancellation of his policy effective October 13, 1957. Thus, State Farm insists there was no policy of insurance in effect on December 7, 1957, the date of the accident. State Farm contends that it had satisfied all of the requirements for effective cancellation of an insurance policy set out by LSA-R.S. 22:636, the pertinent provisions of which are shown as follows:
"A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
"(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
"(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.
"B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
"C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed."
The trial court in reaching a decision that the policy had not been cancelled *901 and thus, was in effect at the time of the accident, properly held that the burden of proof is always upon the defendant insurer to show that the policy has been cancelled. Paz v. Implement Dealers Mutual Insurance Company, La.App., 89 So.2d 514.
The sufficiency of the alleged cancellation notice itself is the first and primary consideration. If this notice was insufficient as a notice of cancellation, it would make no difference how or in what manner it was mailed or received. It would still be insufficient to effect cancellation of the policy.
Concerning the alleged notice of cancellation itself, in bold letters across the top of the notice the following statement is contained: "CANCELLATION NOTICE IF PAYMENT HAS BEEN MADE, PLEASE DISREGARD THIS NOTICE." In addition to the identifying address and financial data, the following message is also contained in this notice:
"Dear Member:
"We have not received the full amount required to keep this policy in force. This leaves us with no alternative, and we are obligated to notify you that this policy is cancelled, effective on 10-13-57 12:01 A.M. Standard Time. (The notice was dated "9-30-57")
"We are confident that you do not want to face the hazards of owning and operating an automobile without insurance. Please forward your remittance without delay, and we will reinstate this policy, effective upon receipt of the amount due.
"Your State Farm agent will be pleased to furnish you with any assistance you may desire." (Parenthetical addition ours)
This court finds that the alleged notice given by defendant State Farm did not constitute an effective notice of cancellation within the requirements of LSA-R.S. 22:636. The initial statement says if payment had already been made that the notice itself may be disregarded. The "Dear Member" letter warns of the hazard of operating an automobile without insurance and concludes with the request for remittance without delay. The notice also shows the present balance owed on the account. The whole tenor of this notice shows that it was a demand for payment rather than an unequivocal notice of cancellation. State Farm's local agent, Mr. Plummer, confirmed the fact that the policy was in full force during the period from the date of the "Dear Member" notice to the stated date of cancellation; and if the premium is paid during this peroid the policy continues in effect without the necessity of any action or reinstatement because the policy "* * * is not considered cancelled." At best it may be said that this notice is ambiguous and in such case the law is clear that it shall be construed against the insurer.
In the case of Ellzey v. Hardware Mutual Insurance Company of Minnesota, La.App., 40 So.2d 24, 27, 28 this court considered the following alleged notice of cancellation:
"`The undersigned hereby gives notice that Policy Number 715603 effective June 12, 1947, will be cancelled on the 13th day of November, 1947, at 12:01 o'clock, A.M. standard time.
"`Payment of $39.57 premium, prior to the effective date of this notice will keep this policy in force.'"
Regarding this notice the court had this to say: "However, let us look at this notice. We are of the opinion that the notice was insufficient. The notice must clearly and unequivocally show a present cancellation * * * to our way of thinking, the notice is merely a demand for the payment of the balance due."
Having concluded that the notice itself was insufficient as a notice of cancellation, any consideration of the manner of mailing or sending the notice would be superfluous. We conclude that the liability policy issued by State Farm Automobile Insurance Company *902 to defendant, James W. Jenkins, was in full force and effect on December 7, 1957, the date of the accident.
We must next consider the question of quantum. The plaintiff, Mrs. Alexander, sustained what is commonly called a "whiplash" injury. She was treated by Dr. Glenn Scott of Ponchatoula the night of the accident (December 7, 1957) and up until September 16, 1959, at which time she was referred to Dr. F. C. McMains, an orthopedic surgeon of Baton Rouge, Louisiana. She entered the Baton Rouge General Hospital on September 17, 1959, and was discharged October 1, 1959. During this hospitalization, plaintiff was placed in traction and upon her release was given instructions to go home and restrict her activities. Dr. McMains testified that Mrs. Alexander would have a limitation of right rotation and left lateral bending, stating that the residual permanent disability would be about 5%. In addition to the traction, she wore what is commonly called a Thomas collar and still wears it intermittently.
The trial court awarded plaintiff $5,000.00 and we find no manifest error in the award. The trial court was in the best position to judge the credibility of the witnesses and its discretion in the field of quantum of damages for personal injuries is entitled to great weight.
The judgment of the trial court in favor of Mrs. Reba Alexander and against James W. Jenkins and State Farm Automobile Insurance Company, in solido in the sum of $5,000.00 plus legal interest and all costs and dismissing the claim against Employers Mutual Liability Company, is hereby affirmed.
Affirmed.

ON REHEARING.
Before ELLIS, LOTTINGER, HERGET and LANDRY, JJ.
LOTTINGER, Judge.
A rehearing was granted in this matter limited to the question of the liability vel non of State Farm Mutual Automobile Insurance Company.
In our original opinion we held that the notice was insufficient as a notice of cancellation, relying on the decision of Ellzey v. Hardware Mutual Insurance Company of Minnesota, La.App., 40 So.2d 24, and that, therefore, the liability policy that had been issued defendant Jenkins was in full force and effect on December 7, 1957, the day of the accident. A reconsideration of the matter has convinced us that as to this phase of the case our conclusions were incorrect.
A study of the Ellzey case, wherein it was held that "[t]he notice must clearly and unequivocally show a present cancellation", shows that a factual situation was presented entirely different from that in the present case. Furthermore, we are governed here by the express provisions of LSA-R.S. 22:636 which does not provide for "present cancellation" but which expressly requires that "written notice of cancellation must be * * * mailed to the insured * * * not less than five days prior to the effective date of cancellation". (Emphasis supplied.) The notice here gave the insured more time than required by statute as the notice is dated September 30, 1957, and the effective date of cancellation is October 13, 1957.
Our reconsideration further convinces us that the notice given was not merely a demand for payment rather than an unequivocal notice. It expressly states that "this policy is cancelled, effective on 10-13-57 12:01 A. M. Standard Time". Nothing whatever on the notice alters or varies the stated date of cancellation. The notice is clear, unequivocal, unambiguous and, we think, perfectly valid and effective as a notice of cancellation as contemplated by the statute.
*903 This brings us to a consideration of the further provisions of LSA-R.S. 22:636 (1) requiring "[w]ritten notice of cancellation must be actually delivered or mailed to the insured * * *." (Emphasis supplied.)
Larimore E. Jenkins, former employee of State Farm, testified by deposition that the notice was sent by certified mail. No return receipt was produced nor were any records or other witnesses produced to show delivery of the cancellation notice to the post office to be sent by certified mail. The defendant Jenkins denied receiving the notice and in this he is corroborated by his mother, Mrs. Neva F. Jenkins and his wife, Mrs. Vera E. Jenkins.
It is well settled that where an insurer defends on the ground of cancellation, it carries the burden of establishing the facts which release or limit its liability. See Skipper v. Federal Insurance Company, 238 La. 779, 116 So.2d 520, which cites with approval the case of Long v. Home Indemnity Company of New York, La.App., 169 So. 154. The latter case, we think, is controlling here and particularly the following language found therein:
"Out of an abundance of caution, this letter was sent by registered mail. The sender desired to have a record if and when received by the addressee, as from such receipt the period for the policy's termination, as fixed by the insurer, would begin to run. Since it was not received, the question arises, Did this letter and notice produce the desired effect, or was it abortive? We have reached the conclusion that it was ineffective.
"In Werner et al. v. Commonwealth Casualty Company, 109 N.J.Law, 119, 160 A. 547, the Court of Errors of the state of New Jersey, considering the cancelation clause of a policy identical in words with that before us, held:
"`Policy provided for cancellation by either party, and, in case of cancellation by company, that notice of cancellation in writing mailed to or delivered at address of assured as given therein should be sufficient, requiring mailing of notice in such form as would be reasonably expected to effectively reach place designated and thereby come to notice of assured, rather than by directing it to an individual living at certain address in manner requiring a personal receipt, and thereby preventing delivery, unless that person were available and receipt personally given.'
"The court, in passing on the question, said:
"`It seems to us that the notice of cancellation must be "mailed to" (using the words of the policy), if mailed at all, in such form of mailing as would be reasonably expected to effectively reach the place designated by the policy and thereby come to the notice of the assured. The purpose of the particular provision specifying how notice should be given is of course to protect the company against changes of residence of the assured which it could not be expected to follow, while at the same time affording reasonable protection to the assured through the mail forwarding custom of the postal authorities. If mailed in the ordinary unregistered letter, the notice would be delivered at the address named or forwarded and thus reach the assured. If directed, however, to an individual living at such address in a manner requiring a personal receipt, it is obvious it could not be delivered unless that person were available and the receipt personally given. It seems to us that mailing a letter to an address by a method that might (and assumably did in this case) prevent its reaching the person addressed is not a fair compliance with the requirement of the policy. The company's own action in *904 placing the limitation might well preclude actual receipt of the notice which normally would follow an unconditional delivery at the place designated. In attempting to procure the personal receipt of the assured for its own evidential purposes, it overreached itself and defeated the very object of the provision of the policyreasonably certain notice to the assured and relief of the company from following his changes of residence.'
"Then the Supreme Court of New York in Kamille v. Home Fire & Marine Insurance Company of California, reported in 129 Misc. 536, 221 N.Y.S. 38, passed upon this same question and held that undelivered notice of cancellation sent by registered mail did not meet the requirements of the policy. The syllabus of the case, correctly reflecting the court's holding, reads:
"`Notice of cancellation of automobile theft insurance policy, sent by registered mail in envelope on which was printed "Personal receipt of addressee required," not actually received by insured, held ineffective to cancel policy because not mailed in manner authorized by cancellation clause of policy authorizing cancellation by giving insured five days' written notice, mailed to insured's address stated in policy.'
"The reasoning of these two cases appears to us to be sound. Had the notice been sent to the assured by ordinary mail, the chances of it being received would have been much more likely than if sent by registered mail, requiring for delivery a personal call from the addressee, whereas, ordinary mail may be otherwise delivered. By attempting to insure delivery of the notice through the more certain means of registry, defendant thereby incurred a greater danger of nondelivery and of indefinitely deferring the commencement of the delay period by it fixed for the policy's termination. Such a notice does not meet the provisions of the policy nor fall within what we deem was the contemplation of the parties thereto." (169 So. 157-158).
For the reasons assigned, the original judgment is reinstated.
REID, J., recused.